## ERASMUS W. BENTON v. A. BIDAULT & CO.

Where a party to an agreement for the purchase of certain merchandise refuses to accept the delivery, the other party wishing to affirm the sale and to recover the price, must show that he tendered the delivery of the articles at the time and place stipulated in the agreement.

Where the vendee refuses to accept the delivery, and the vendor wishes to have the thing sold at the vendee's risk, a private sale is not the proper mode of ascertaining the loss.

APPEAL from the Fifth District Court of New Orleans. *Buchanan*, J. *J. W. Duncan*, for Plaintiff. *H. Gaither*, for defendant. The judgment of the court was pronounced by

PRESTON, J. On the 20th of November, 1849, the defendants, through the instrumentality of *Bernard Finney*, purchased from the plaintiff two flatboat loads of potatoes, then lying at Freeport, at the price of $1 80 per barrel. One of the boat loads was delivered at the flatboat landing of the Second Municipality of New Orleans, and paid for by the defendants.

The defendants plead, and have offered evidence to prove, that the other boat load was to have been delivered at the same place, and in good and merchantable condition. The plaintiff contends that the last boat was not to be delivered in New Orleans; there was a dispute also as to the mode of ascertaining the condition of the potatoes.

The plaintiff, on the 13th of December, notified the defendants to come and receive the second boat load, and that he would sell them that day at their risk, if not taken away; and accordingly did that day sell them to one *Nesbit* for $1 40

a barrel. He claims forty cents a barrel, loss on the sale of the sound potatoes, two hundred dollars damages on account of the deterioration of the potatoes, in consequence of the delay of the defendants to receive them, and some other damages. The district court rendered judgment for the defendants, on the ground that the boat was to be delivered at the flatboat landing of the Second Municipality, and was not tendered there.

The first boat load was delivered at that landing, which raises some presumption that the second load was to be delivered at the same place. *Mr. Adele*, the plaintiff's clerk, understood that the boat and cargo was to be delivered in New Orleans, for he undertook so to deliver it, as soon as the first cargo was disposed of. *Finney*, the broker who made the contract, states that they were to be delivered at the same place. Even if, as contended, he only inferred that from the conduct and conversation of the plaintiff's agents, (the plaintiff being confined to his room by a broken leg,) we cannot interpret that conduct and conversation differently. *Clark*, the leading witness of the plaintiff, does not say that the cargoes were to be delivered at Freeport, but declares that the first cargo was brought down and delivered to *Mr. Finney* at New Orleans.

The testimony preponderates in favor of the view taken by the district court, and if it was agreed to deliver the property in New Orleans, it should have been tendered there. Moreover, a private sale at Freeport was not a proper mode of ascertaining the loss. It is probable, however, that there would not have been a difference between the parties, as to the place of delivery, if there had not been a misunderstanding as to the mode of separating the sound from the unsound potatoes. The price which the defendants agreed to give for the potatoes was the market price of sound potatoes; twenty or thirty per cent of the potatoes were rotten; the defendants insisted that they should be turned out of the barrels, and the sound separated from the unsound, which the plaintiff's agent refused to have done, insisting that it was the custom to separate the sound from unsound barrels, by cutting holes in their sides, and only to examine more closely those that were suspected of being unsound by inspection through the holes or by the smell.

Where the damage amounted to a fifth of a cargo, we think the mode of inspection proposed by *Finney*, on behalf of the defendants, was reasonable, and in fact it was substantially pursued in re-selling the potatoes to *Nesbit*, when a fifth of the potatoes were ascertained to be damaged. We think too that *Finney*, as agent of the defendants, acted reasonably in offering to the plaintiff's agent, as proved by himself, to have the question as to the soundness of the cargo referred to persons competent to judge. Although he states that he refused because they were purchased by sample; yet *Finney* states that he purchased only a sound, merchantable article.

Under the circumstances, the claim of the defendants' agent, to have the sound potatoes alone delivered, was reasonable. He sold them in this manner for a very small profit, and the purchasers declined taking them after examination on account of the extent of their unsoundness. If the defendants were liable for any deterioration between the 20th of November and the 2d of December, when the dispute arose as to the condition of the potatoes, that damage alone should have been claimed, and such as occurred on account of the unreasonable delay in receiving the article.

Notwithstanding these views of the evidence, we are not clear that the defendants were free from blame, and must dispose of this suit on the general principle, that it is the duty of plaintiffs so to manage their business, and to produce

in court such evidence as to make it certain that they are entitled to what they demand, and that courts cannot judicially declare their demands well founded without that certainty.

The judgment of the district court is affirmed, with costs.